**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MAHON** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 20-2396** |
| | * | |
| **PELLOAT, ET AL.** | * | **SECTION "L" (5)** |
| | * | |

**ORDER AND REASONS**

Before the Court is Defendants' Motion for Summary Judgment, R. Doc. 45. Plaintiff filed an opposition, R. Doc. 49, to which Defendants filed a reply, R. Doc. 52. Having considered the briefing and the applicable law, the Court now rules as follows.

I.    **BACKGROUND**

Plaintiff Joseph R. Mahon, Jr. brings this action under 42 U.S.C. § 1983 against Defendants Jean P. Pelloat, Bruce M. Danner, and Barney Tyrney in their official and individual capacities as the Mayor of Madisonville, the Town Attorney for Madisonville, and the Chief of Police of the Madisonville Police Department, and against the Town of Madisonville. R. Doc. 1. Plaintiff, a resident of Madisonville, Louisiana, alleges that on March 12, 2020, he erected signs on the side of his house in response to a Louisiana Legislative Auditor's Advisory Services Report on the Town of Madisonville that had been published in March 2019. *Id.* at 3-6. Plaintiff had requested the Auditor's Report and had been involved in prior disagreements with the Mayor and the Town government. R. Doc. 49 at 3. Plaintiff asserts that the Auditor's Report identified numerous problems of public concern. R. Doc. 1 at 4-5. Plaintiff alleges that his signs were meant to comment on these problems mentioned in the Auditor's Report and other issues concerning Pelloat and Danner. *Id.* at 5-6. Plaintiff further alleges that he believed the content of the signs to be "true, accurate, and of public concern." *Id.* at 6.

1

Plaintiff's first sign read:

"**THE LOUISIANA LEGISLATIVE AUDITOR**

**OFFICE INSPECTION IDENTIFIED PROBLEMS**

(Report 3-13-19) Policies and Procedures – Finance Committee – Bank

Reconciliations – Collections – Non-Payroll Disbursements – Credit Card – Travel

and Expense Reimbursements – Contracts – Payroll and Personnel – Ethics –

Collections – Traffic Tickets – Municipal Classification – Town Charter – Capitol

Assets

**IS THIS WHAT YOU WANTED?**"

*Id.* at 5-6. Plaintiff's additional signs read:

"**THE LYING MAYOR**

**JEAN PELLOAT**

Increased his pay %80 – Payed Town Attorney $650,000 + for an old wooden

building – Increased tax collection rates – Increased traffic tickets – Destroyed

Rampart St."

*Id.* at 6.

Plaintiff asserts that the day after he posted his signs, Tyrney visited Plaintiff's home and advised Plaintiff that the signs were problematic due to their size and content. *Id.* Plaintiff alleges that Tyrney said that the signs were "opinionated" and that, according to Pelloat and Danner, they were not an appropriate political sign. *Id.* Plaintiff avers that he claimed his First Amendment rights, but Tyrney reiterated that the signs were not proper political signs and informed Plaintiff that he would be criminally cited if he did not comply with the sign ordinance. *Id.* Plaintiff alleges that, the next day, he altered the signs by turning them into several signs that were no more than

six square feet each to comply with the maximum size allowed by the Town's sign ordinance, then put them back on his house. *Id.* at 6-7. Plaintiff also alleges that he added to his signs the message "Vote Tucker," referring to a candidate running against Pelloat in the mayoral election. *Id.* at 7.

Plaintiff asserts that on March 17, 2020, after seeing Plaintiff's altered signs, Tyrney returned to Plaintiff's home and issued Plaintiff a criminal citation for a "sign violation." *Id.* Plaintiff further asserts that he wrote to Tyrney and Danner requesting an explanation of his alleged violation, to which Danner responded on March 19, 2020, explaining that the violation related to Section 36-88(e)(3) of the Town's Code of Ordinances. *Id.* at 8.

Plaintiff avers that Section 36-88 (e)(3) of the Madisonville Code of Ordinances permits "political signs, on a temporary basis, not exceeding six square feet in sign face and six square feet in total area." *Id.* at 8. Plaintiff further avers that the Code requires such signs to be removed "not later than ten days following the last election to which the sign pertains" and that the Code does not provide a definition for "political sign." *Id.* Plaintiff asserts that, in addition to political signs, the Code permits signs "identifying the name of a building," "real estate signs," and "construction signs," but prohibits all other types of signage. *Id.* Plaintiff avers that the Code of Ordinances provides that anyone who violates the Code's provisions "shall be punished by a fine not exceeding $500.00 and imprisonment for a . . . term not exceeding 30 days in jail," and up to 100 hours of community service. *Id.* at 8.

Plaintiff alleges that he faces a criminal prosecution for posting the signs. *Id.* at 9. Plaintiff claims that Pelloat and Danner, who serve the roles of judge and prosecutor, respectively, in the Mayor's Court of Madisonville, recused themselves from this matter when the prosecution against Plaintiff began. R. Doc. 49 at 22-23. Moreover, Plaintiff further alleges that on October 1, 2021, the criminal complaint against him was dismissed with prejudice. R. Doc. 49 at 19.

Plaintiff alleges that Defendants violated his rights under the First Amendment by retaliating against him for protected speech in violation of 42 U.S.C. § 1983. *Id.* at 9. Specifically, Plaintiff argues that posting signs on his property was constitutionally protected activity and that Defendants unlawfully infringed on his First Amendment rights by sending Tyrney to Plaintiff's home and bringing criminal charges against him. *Id.* at 10. Plaintiff also alleges that Defendants violated his rights under the Fourteenth Amendment's equal protection clause by treating him differently from others similarly situated when they threatened, cited, and prosecuted him, also in violation of 42 U.S.C. § 1983. *Id.* at 12. Plaintiff argues Defendants "intentionally treated [him] differently from other similarly-situated residents of Madisonville, with respect to the display of signs," with no rational basis for their actions. *Id.* at 12. Plaintiff further alleges that Defendants acted as final policymakers, making the Town of Madisonville liable, and that Defendants are not protected by qualified immunity. *Id.* at 10, 13, 14.

Plaintiff seeks a declaration that Defendants' conduct deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution of the United States; an injunction prohibiting Defendants from engaging in the illegal acts Plaintiff alleges; compensatory damages; damages for emotional pain and suffering, mental anguish, and loss of enjoyment of life; punitive damages; and attorney's fees and costs. *Id.* at 15.

The Town of Madisonville denies Plaintiff's allegations and asserts various affirmative defenses, including: Plaintiff has not met his burden of proof that the Town violated his statutory or constitutional rights; the Town, as a government entity, cannot be held vicariously liable under §1983 for the alleged constitutional torts of its employees or agents; and the Town has no official policies that caused its employees or representatives to violate an individual's constitutional rights. R. Doc. 4.

Pelloat and Tyrney deny Plaintiff's allegations and assert various affirmative defenses, including: Pelloat and Tyrney were government officials performing discretionary functions and are entitled to qualified immunity because they did not violate clearly established statutory or constitutional rights of which a reasonable person would have known; there was no concerted action among Defendants to accomplish any unlawful objective for the purpose of harming another; and Plaintiff was guilty of comparative fault in violating the sign ordinance and failed to mitigate his damages. R. Doc. 9. Danner asserts the same affirmative defenses and argues that he is entitled to absolute immunity because he was acting in a prosecutorial capacity for the Mayor's Court. R. Doc. 11. In a Supplemental Answer, Pelloat also asserts that he is entitled to absolute immunity. R. Doc. 16.

On March 5, 2021, the Court granted Pelloat, Danner, and Tyrney's motion to dismiss Plaintiff's claims against them in their official capacities. R. Doc. 25. The Court found that Plaintiff's claims against Pelloat, Danner, and Tyrney in their official capacities merely duplicated Plaintiff's claims against the Town of Madisonville. *Id.* at 6.

## II.     PENDING MOTION

Defendants seek summary judgment on Plaintiff's remaining claims against the Town of Madisonville and against Danner, Pelloat, and Tyrney in their individual capacities. R. Doc. 45 at 1. Defendants argue that Plaintiff has not produced admissible evidence that Defendants' actions were substantially motivated by Plaintiff's exercise of constitutionally protected conduct, which is a necessary element of Plaintiff's retaliation claim. *Id.* at 2. Defendants further argue that Plaintiff has not produced evidence that Defendants chose to prosecute him invidiously or in bad faith, a necessary element of Plaintiff's equal protection claim. R. Doc. 45-2 at 5. Defendants

5

alternatively argue that Pelloat and Danner were acting in their judicial and prosecutorial capacities, respectively, and are thus entitled to absolute immunity. R. Doc. 45 at 2-3.

In opposition, Plaintiff argues that he has produced evidence that Defendants were motivated to take adverse action against him by his exercise of free speech. R. Doc. 49 at 16. Plaintiff also argues that he has produced evidence that Defendants treated him differently than others similarly situated due to personal vindictiveness, supporting his equal protection claim. *Id.* at 20-21. Plaintiff further argues that Pelloat and Danner are not entitled to absolute immunity because they recused themselves from this matter and thus were not acting in their official capacities after their recusals, and because their actions before their recusals are not the types of actions protected by absolute immunity. *Id.* at 22-23.

## III.   APPLICABLE LAW

### a.  *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### b.  First Amendment Retaliation

The First Amendment, in addition to protecting free speech, prohibits retaliation against the exercise of free speech—that is, "adverse governmental action against an individual" due to protected speech. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999)). To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was "engaged in constitutionally protected activity"; (2) "the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Id.* A deprivation of First Amendment rights by a state or local official is actionable under 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights,

privileges, or immunities secured by the Constitution and [federal] laws" to which an individual was subjected "under color of [state law]."

For a First Amendment retaliation claim in which the adverse action the plaintiff alleges is a criminal prosecution, the plaintiff must also establish the state law elements of malicious prosecution. *Keenan*, 290 F.3d at 257; *Izen v. Catalina*, 398 F.3d 363, 366-67 (5th Cir. 2005). Under Louisiana law, there are six elements of a malicious prosecution claim:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages conforming to legal standards resulting to plaintiff.

*Seals v. McBee*, No. CV 16-14837, 2019 WL 2451630, at *5 (E.D. La. June 12, 2019) (quoting *Graham v. Foret*, 818 F. Supp. 175, 177 (E.D. La. 1992)). "Probable cause, in the context of malicious prosecution . . . [is] '[t]he existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.'" *Keenan*, 290 F.3d at 260 (quoting *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir.1999)). "[T]he dismissal of the prosecution gives rise to the presumption of a lack of probable cause." *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143. Moreover, "malice may be inferred from a lack of probable cause or where the defendant acted in reckless disregard of the other person's rights." *Id.* at 1145.

### c. *Fourteenth Amendment Equal Protection*

The equal protection clause of the Fourteenth Amendment "forbids state actors from treating similarly situated individuals differently for a discriminatory purpose and without a rational basis." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015). The first type of equal protection claim Plaintiff brings is based on selective prosecution. Although the government "retains 'broad discretion' as to whom to prosecute," that discretion "is not 'unfettered. Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints.'" *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *United States v. Batchelder*, 442 U.S. 114, 125 (1979)). To make a claim of unconstitutional selective prosecution, a plaintiff must demonstrate (1) "that [he] w[as] singled out for prosecution while others similarly situated who committed the same crime were not prosecuted," and (2) "that the government's discriminatory selection of [him] for prosecution was invidious or done in bad faith." *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201 (5th Cir. 2020) (quoting *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993)). In other words, the plaintiff must prove "that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000).

The second type of equal protection claim Plaintiff brings is based on the theory that Plaintiff was discriminated against as a class of one. "An equal protection claim requires either identification of a class or showing that the aggrieved party is a 'class of one.'" *Holden v. Perkins*, 398 F. Supp. 3d 16, 25 (E.D. La. 2019) (quoting *Gil Ramirez*, 786 F.3d at 419). To make a "class of one" claim, a plaintiff must show (1) that he "has been intentionally treated differently from others similarly situated," and (2) that "there is no rational basis for the difference in treatment." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

A "class of one" claim fails "if the government's actions [were] rationally related to a legitimate government interest." *Id.* (citing examples).

The third type of equal protection claim Plaintiff alleges is based on "personal vindictiveness." The United States Court of Appeals for the Fifth Circuit has suggested that a "personal vindictiveness" equal protection claim is a type of "class of one" claim based on a showing of "vindictive animus" of a government official against an individual. *See Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009), *aff'd sub nom. Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225 (5th Cir. 2012) ("In this circuit, not 'all 'class of one' equal protection claims require a showing of vindictive animus.' . . . The circuit recognizes three different types of class-of-one claims: (1) 'selective enforcement'; (2) adverse zoning permit decisions; and (3) 'personal vindictiveness.'") (quoting *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 824 n. 3 (5th Cir. 2007); *Mikeska v. City of Galveston*, 451 F.3d 376, 381 n. 4 (5th Cir. 2006)). However, the Fifth Circuit has not explicitly embraced "personal vindictiveness" as a discrete basis for an equal protection claim or established the requirements for such a claim. *See Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 n. 18 (5th Cir. 2000) ("We have never specifically addressed whether [personal vindictiveness] would be enough to support an equal protection claim without some other class-based discrimination . . . ."); *Parude v. City of Natchez*, 72 F. App'x 102, 104 (5th Cir. 2003).

### d. *Absolute Immunity*

Defendants argue that two types of absolute immunity apply: judicial immunity and prosecutorial immunity. Judicial immunity, "[l]ike other forms of official immunity . . . is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice . . . ." *Mireles v. Waco*, 502 U.S.

9, 11 (1991). There are only two exceptions to this broad immunity: "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity . . .  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Prosecutorial immunity confers absolute immunity to prosecutors against claims of malicious prosecution—even if it "leave[s] the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). This immunity applies to actions that are "an integral part of the judicial process," including "initiating a prosecution and . . . presenting the State's case." *Id.* at 430-31. However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Further, "prosecutors are not entitled to absolute immunity for their actions in giving legal advice to the police." *Id.* at 271.

In determining whether a government official is entitled to absolute immunity rather than qualified immunity, courts apply a "functional approach . . . which looks to 'the nature of the function performed, not the identity of the actor who performed it.'"  *Id.* at 269 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)); *see also Marrero v. City of Hialeah*, 625 F.2d 499, 508 (5th Cir. 1980) ("[I]t is the official function that determines the degree of immunity required, not the status of the acting officer."). Moreover, "the official seeking absolute

immunity bears the burden of showing that it is justified by the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

## IV.   DISCUSSION

### a.   *First Amendment Retaliation*

Defendants argue that Plaintiff has not produced admissible evidence that Defendants' adverse actions were substantially motivated by Plaintiff's exercise of protected speech, a requirement of Plaintiff's First Amendment retaliation claim. R. Doc. 45. Defendants cite Plaintiff's deposition testimony that he could not identify any documents or explicit statements indicating that Defendants' actions were motivated by Plaintiff's exercise of free speech. R. Doc. 45-2 at 3; R. Doc. 48-1 at 98-99, 132-33. Defendants also cite the deposition testimony of Pelloat, Danner, and Tyrney claiming that Plaintiff was issued a citation only because his signs exceeded the size limit under the Town's sign ordinance, not because of the signs' content. R. Doc. 45-2 at 3; R. Doc. 45-5 at 76-77; R. Doc. 48-2 at 48-49; R. Doc. 48-3 at 36-37, 47. Defendants argue that Plaintiff's own opinions about Defendants' motivations are not sufficient to defeat summary judgment. R. Doc. 45-2 at 4; R. Doc. 52 at 2.

In opposition, Plaintiff argues that he has produced circumstantial evidence that Defendants' actions were motivated by his exercise of free speech. R. Doc. 49 at 16-17. Specifically, Plaintiff asserts that the fact that Danner pointed out that the signs were critical of Pelloat and Danner; that Pelloat and Danner personally sent Tyrney to tell Plaintiff to remove the signs; that Tyrney referred to the signs as "opinionated" and not "political" when this distinction is not found in the Town's sign ordinance; that Defendants suggested that a sign must be "understandable" when this requirement is not found in the Town's sign ordinance; and that Pelloat had previously described Plaintiff as a "constant complainer" all indicate that Defendants

were motivated by Plaintiff's protected speech. R. Doc. 49 at 17-18. Plaintiff also argues that,
because the prosecution against him was dismissed, there is a presumption that Defendants
lacked probable cause. *Id.* at 19. Plaintiff further argues that questions of motivation are not
appropriate to resolve on summary judgment. *Id.* at 17.

The Court finds that Defendants are not entitled to summary judgment on Plaintiff's First
Amendment retaliation claim. The first two elements of Plaintiff's claim—that Plaintiff was
"engaged in constitutionally protected activity" and that "the defendants' actions caused [him] to
suffer an injury that would chill a person of ordinary firmness from continuing to engage in that
activity"—are not disputed. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). As for the third
element—that "the defendants' adverse actions were substantially motivated against the
plaintiffs' exercise of constitutionally protected conduct"—Plaintiff has satisfied this
requirement sufficiently to survive summary judgment. *Id.* Viewing the evidence in the light
most favorable to Plaintiff, Plaintiff has produced circumstantial evidence that Defendants were
motivated by his protected speech—that is, the content of his signs. *Id.* Plaintiff has testified that
Defendants' explanations for why Plaintiff's signs violated the Town's sign ordinance were
inconsistent, and Defendants have acknowledged that they were aware that the signs criticized
them and were unhappy with the signs' content. R. Doc. 49 at 17-18; R. Doc. 48-2 at 49.
Moreover, there is a history of conflict between Plaintiff and Pelloat and Danner, who, Plaintiff
alleges, personally sent Tyrney to order Plaintiff to remove his signs. R. Doc. 49 at 3, 17.
Plaintiff also asserts that Tyrney suggested that the signs' content—being too "opinionated"—
was part of the problem. *Id.* at 17. This evidence creates a genuine issue of material fact as to
whether Defendants' actions were substantially motivated by Plaintiff's exercise of free speech.
Because Defendants have not challenged whether Plaintiff has produced evidence of the

elements of malicious prosecution, as a First Amendment retaliation claim based on prosecution requires, it is unnecessary to address those elements.

### b. *Fourteenth Amendment Equal Protection*

Defendants argue that Plaintiff has not produced admissible evidence that Defendants' decision to prosecute him was invidious or in bad faith. R. Doc. 45-2 at 5. Defendants argue that Plaintiff was not treated differently from other Madisonville citizens whose signs violated the Town's sign ordinance, citing Tyrney's deposition testimony that he had investigated other residents for violations of the sign ordinance and asked them to remove their signs. *Id.*; R. Doc. 48-3 at 15-16. Defendants aver that those other residents were not issued citations because, unlike Plaintiff, they willingly removed their signs after they were notified of the violation. R. Doc. 52 at 6. Defendants again argue that Plaintiff's own theories about Defendants' motivations are not sufficient to defeat summary judgment. R. Doc. 45-2 at 5-6.

In opposition, Plaintiff argues that he has produced evidence that Defendants prosecuted him due to "personal vindictiveness" and their desire to prevent his exercise of free speech. R. Doc. 49 at 20. Plaintiff claims that he was the only citizen cited under the sign ordinance in 2020 and in the three years since Danner became the Town Attorney. *Id.* Plaintiff further alleges that another local property owner displayed a large "pro-life" sign that exceeded the size limit, but, according to Tyrney's testimony, that property owner was not cited or asked to remove the sign. *Id.* at 21. Thus, Plaintiff argues, he has produced evidence that he was treated differently than others similarly situated with no rational basis for the disparate treatment. *Id.* at 20.

The Court finds that Defendants are not entitled to summary judgment on Plaintiff's equal protection claim. Plaintiff asserts his equal protection claim under three theories. The first theory, selective prosecution, requires Plaintiff to prove (1) "that [he] w[as] singled out for

prosecution while others similarly situated who committed the same crime were not prosecuted" and (2) "that the government's discriminatory selection of [him] for prosecution was invidious or done in bad faith." *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 201 (5th Cir. 2020) (quoting *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993)) Plaintiff may accomplish this by showing "that the government official's acts were motivated by improper considerations, such as . . . the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000).

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has produced evidence suggesting that he was treated differently from other Madisonville residents whose signs violated the Town's ordinance. Specifically, Plaintiff has asserted that no other resident has been cited under the sign ordinance for several years, despite Tyrney's testimony that he has notified other residents that their signs violated the ordinance. R. Doc. 49 at 20. Plaintiff has also asserted, again according to Tyrney's testimony, that a property owner whose large "pro-life" sign arguably violated the ordinance was not cited or asked to remove the sign. *Id.* at 21. Moreover, Plaintiff has produced evidence suggesting that his selection for prosecution was invidious or in bad faith. Specifically, Plaintiff has shown that there was a history of conflict between him and Defendants, that Danner and Pelloat personally sent Tyrney to order Plaintiff to remove the signs that criticized them, and that Tyrney suggested the signs' content was problematic. *Id.* at 3, 17-18. This evidence is sufficient to create a genuine issue of material fact as to whether Defendants' decision to prosecute Plaintiff was due to their desire to prevent his exercise of protected speech.

The second theory, a "class of one" claim, requires Plaintiff to show that (1) he "has been intentionally treated differently from others similarly situated," and (2) "there is no rational basis

for the difference in treatment." *Holden v. Perkins*, 398 F. Supp. 3d 16, 25 (E.D. La. 2019). This type of claim fails "if the government's actions [were] rationally related to a legitimate government interest." *Id.* Again, Plaintiff has provided sufficient evidence that he was treated differently from others who put up signs that violated the Town's ordinance, as discussed above. Moreover, Plaintiff has produced evidence to suggest that there was no rational basis for the difference in treatment. Plaintiff has asserted that he altered his signs to bring them into compliance with the ordinance's size limit but was prosecuted regardless, suggesting that Defendants' purported reason for prosecuting Plaintiff—that his signs were too big—was false. R. Doc. 49 at 6. Further, it is a factually pregnant issue whether Defendants' actions were rationally related to a legitimate government interest—especially given that restrictions on the content of political signs would violate the First Amendment. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015); *City of Ladue v. Gilleo*, 512 U.S. 43 (1994).

The third theory under which Plaintiff asserts his equal protection claim is "personal vindictiveness." However, the Fifth Circuit has not expressly accepted this type of claim or established its requirements. *See Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 n. 18 (5th Cir. 2000); *Parude v. City of Natchez*, 72 F. App'x 102, 104 (5th Cir. 2003). Therefore, the Court declines to address this theory.

### c. *Absolute Immunity*

Defendants argue that Pelloat and Danner are entitled to absolute immunity because they were acting in their judicial and prosecutorial capacities, respectively, through their roles in the Mayor's Court of Madisonville when they carried out the adverse actions Plaintiff alleges. R. Doc. 45 at 7. Defendants also argue that Pelloat and Danner's eventual recusals are irrelevant because the actions at issue took place before they recused themselves. R. Doc. 52 at 6-7.

16

In opposition, Plaintiff argues that Pelloat and Danner were not acting in their judicial and prosecutorial capacities after he was criminally cited because they recused themselves once the prosecution began, and thus lost the protection of immunity. R. Doc. 49 at 22. Plaintiff further argues that Pelloat was not acting in his judicial capacity when he sent Tyrney to order Plaintiff to remove his signs because this is not a judicial function, and that Danner is not entitled to prosecutorial immunity for giving Tyrney legal advice. *Id.* at 22-23.

The Court finds that Defendants are not entitled to summary judgment on the issue of absolute immunity. Pelloat's purported judicial immunity only applies to "function(s) normally performed by a judge," in which the parties "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Here, Pelloat's dual role as the Mayor of Madisonville and a judge in the Mayor's Court makes it unclear whether he performed certain actions—like sending Tyrney to Plaintiff's residence to ask Plaintiff to remove his signs—in his judicial capacity or as Mayor. Regardless, dispatching law enforcement to advise citizens of violations is not a typical judicial function, and it is doubtful that the parties perceived that action as part of Pelloat's role as a judge in the Mayor's Court. Given that Defendants concede that Pelloat recused himself from this matter once the actual prosecution began, his additional involvement is unclear, but is likely not protected by judicial immunity. R. Doc. 52 at 6-7.

As for Danner's purported prosecutorial immunity, it does not apply to his giving legal advice to Tyrney, as prosecutorial immunity does not cover giving legal advice to law enforcement. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). Danner's additional involvement in this matter is unclear, given that Defendants concede he recused himself from the prosecution itself. R. Doc. 52 at 6-7. However, prosecutorial immunity only covers actions that are part of "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424

17

U.S. 409, 430-31 (1976). Thus, if Danner recused himself as soon as the actual prosecution began, whatever actions he took before that point are likely not entitled to prosecutorial immunity.

Defendants have not met their burden to show that either Pelloat or Danner is entitled to absolute immunity for the actions that form the basis of Plaintiff's allegations. Whether Defendants are entitled to qualified immunity rather than absolute immunity and whether the Town's sign ordinance is constitutional are separate questions that the parties have not fully discussed in their briefing on this motion. Thus, the Court does not address these questions in ruling on this motion.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED**.

New Orleans, Louisiana, this 17th day of November, 2021.

UNITED STATES DISTRICT JUDGE